IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: DITROPAN XL ANTITRUST LITIGATION

CASE NO. M:06-CV-01761-JSW

MDL No. 1761

This Order Relates to:

ALL CASES

**NOTICE OF TENTATIVE RULING AND QUESTIONS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING **TENTATIVE** RULING AND QUESTIONS FOR THE HEARING SCHEDULED ON FEBRUARY 9, 2007:

The Court **TENTATIVELY grants** Defendants' motion to dismiss the Direct Purchaser Plaintiff's complaint and **TENTATIVELY grants in part and denies in part** Defendants' motion to dismiss the Indirect Purchaser Plaintiff's complaint. The Court has reviewed the parties' memoranda of points and authorities and, thus, does not wish to hear the parties reargue matters addressed in those pleadings. If the parties intend to rely on authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities reasonably in advance of the hearing and to make copies available at the hearing. If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, without argument or additional briefing. *Cf.* N.D. Civil Local Rule 7-3(d). The parties will be given the opportunity at oral argument to explain their reliance on such authority.

Each party will have twenty minutes to address the following questions:

**Direct Purchaser Plaintiff's Complaint**

(1) Plaintiffs Stephen L. LaFrance Holdings ("LaFrance"), SAJ Distributors ("SAJ"), and American Sales Company ("ASC") (collectively, "Direct Purchaser Plaintiffs") are seeking to maintain a direct purchaser antitrust action against Johnson & Johnson and Alza Corporation ("Alza"). However, it is undisputed that none of the Direct Purchaser Plaintiffs or the companies who assigned their claims to the Direct Purchaser Plaintiffs, McKesson Corporation ("McKesson") and Cardinal Health, Inc. ("Cardinal"), bought Ditropan XL from Johnson & Johnson or Alza during the class period. Instead, McKesson and Cardinal purchased Ditropan XL from Ortho-McNeil Pharmaceutical, Inc. ("Ortho-McNeil"), a wholly owned subsidiary of Johnson & Johnson and a separate legal entity from both Johnson & Johnson and Alza.

    (a) With respect to Defendants argument that Plaintiffs lack standing to sue Johnson & Johnson and Alza because neither company sold Ditropan XL during the class period, Plaintiffs argue that they "have alleged facts from which it could be inferred that Alza and [Johnson & Johson] conspired and engaged in unlawful conduct with [Ortho-McNeil]." (Direct Purchasers Opp. at 10.) Where in their complaint do Direct Purchaser Plaintiffs allege such facts?

    (b) Assuming *arguendo* that Direct Purchaser Plaintiffs have alleged facts demonstrating a conspiracy between Alza, Johnson & Johson and Ortho-McNeil, on what authority, if any, do Direct Purchaser Plaintiffs rely to support their position that they may assert a direct purchaser antitrust claim against an entity from whom neither they, nor their assignors, purchased the product?

(2) In light of the fact that McKesson only assigned SAJ and LaFrance fifty percent of its claims against "Defendants ... arising out of or relating to McKesson's purchase of Ditropan XL," why should SAJ and LaFrance's claims not be dismissed for failure to join an indispensable party?

(3) Do the Direct Purchaser Plaintiffs dispute that McKesson and Cardinal purchased Ditropan XL pursuant to their respective Distribution Performance Agreements, attached as Exhibits 1 and 2 to the Declaration and Supplemental Declaration of Jill Lavitsky, or that their purchases of Ditropan XL were governed by the Distribution Performance Agreements? If so, on what basis?

(4) What law do the parties contend governs the Court's determination of whether the purported assignments by McKesson and Cardinal of their antitrust claim were valid?

(5) Under what state law(s) are the Direct Purchaser Plaintiffs seeking to bring their claim(s) for unjust enrichment?

**Indirect Purchaser Plaintiff's Complaint**

(6) On what authority, if any, do Indirect Purchaser Plaintiffs rely to support their position that they may assert an antitrust claim against an entity that did not sell the product during the class period? Given that the company that actually sold the product during the class period, Ortho-McNeil, is not a defendant in the action, on what authority do Indirect Purchaser Plaintiffs rely to demonstrate that they have alleged an antitrust injury?

(7) Alza moves to dismiss many of Indirect Purchaser Plaintiffs' state law antitrust claims based on lack of standing, but do not appear to move to dismiss their California Business and Professions Code § 17200 ("Section 17200") claim. Assuming *arguendo* that Plaintiffs may only bring state law claims if they personally have been injured in the state at issue, why should the Court not dismiss the Section 17200 claim for lack of standing as well?

(8) Pursuant Section 17200, "there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent." *See Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006). To the extent there is a reliance requirement for Section 17200 claims based on fraudulent conduct, does Alza have any authority for the proposition that a reliance requirement has been imposed on Section 17200 claims brought under the unfair prong?

(9) Indirect Purchaser Plaintiffs' Cartwright Act claim appears to be more akin to one under Sherman Act § 2, which prohibits monopolies, verses Sherman Act § 1, which prohibits concerted action among two or more persons to restrain trade. However, the Cartwright Act "does not have any parallel to Sherman Act § 2's anti-monopoly provisions." *See Freeman v. San Diego Assoc. of Realtors*, 77 Cal. App. 4th 171, 2000 n. 32 (2000); *see also Discovision Associates v. Disc Mfg., Inc.*, 1997 WL 309499, at *12 (D. Del. April 3, 1997) (holding that only the Sherman Act § 1 claims, and not the § 2 claims, could be brought under the Cartwright Act).

    (a) What are the parties' respective positions as to whether the Cartwright Act prohibits conspiracies or coercion to create or further monopolies? On what authority do the parties rely?

    (b) Assuming *arguendo* that the Cartwright Act does not prohibit conspiracies or coercion to create or further monopolies, on what authority, if any, do Plaintiffs rely to demonstrate that attempts to exclude competitors from the market, even if done through coercion, as opposed to attempts to collude competitors into agreeing to certain prices, would be prohibited by the Cartwright Act?

(10) Does the Tennessee Trade Practices Act prohibit conduct that falls under the Sherman Act § 2, *i.e.* monopolization? If not, under Tennessee law, in the absence of sufficient

allegations of conspiracy, may allegations of coercion suffice? On what authority do the parties rely for their respective positions?

(11)  With respect to both motions, do the parties have anything further to add?

Dated: February 8, 2007

JEFFREY S. WHITE  
UNITED STATES DISTRICT JUDGE