IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: DITROPAN XL ANTITRUST LITIGATION | CASE NO. M:06-CV-01761-JSW<br><br>MDL No. 1761 |
| This Order Relates to:<br><br>   ALL CASES<br>_____ / | **ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS DIRECT PURCHASER'S COMPLAINT AND (2) GRANTING IN PART AND DENYING IN PART ALZA'S MOTION TO DISMISS INDIRECT PURCHASERS' COMPLAINT** |

Now before the Court are Defendants' motions to dismiss the two consolidated class action complaints filed by plaintiff American Sales Company ("ASC" or "Direct Purchaser Plaintiff")[1] and by City of Fargo Health Trust Fund, Local 28 Sheet Metal Workers Fund, United Food & Commercial Workers Union & Employers Midwest Health Fund, Plumbers & Pipefitters Local 572 Health & Welfare Fund, and Teamsters Local No. 35 Health Plans (collectively, "Indirect Purchaser Plaintiffs"). Defendants Alza Corporation ("Alza") and Johnson & Johnson (collectively, "Defendants") move jointly to dismiss the Direct Purchaser Plaintiff's action. Alza is the only named defendant in the Indirect Purchaser Plaintiffs' action, and thus, only Alza moves to dismiss their complaint. Having considered the parties' arguments, relevant legal authority, and having had the benefit of oral argument, the Court

---

[1] Although the Direct Purchaser Plaintiff class action complaint was filed by Stephen L. LaFrance Holdings ("LaFrance") and SAJ Distributors ("SAJ") as well, LaFrance and SAJ recently submitted a notice of voluntary dismissal. (Docket No. 60.)

hereby grants the motion to dismiss the Direct Purchaser Plaintiff's complaint and grants in part and denies in part the motion to dismiss the Indirect Purchaser Plaintiffs' complaint.

**BACKGROUND**

This is an antitrust action. In essence, the Direct and Indirect Purchaser Plaintiffs allege that Defendants filed a baseless complaint to preclude a competitor from producing a generic version of the drug Ditropan XL, as well as other anti-competitive conduct. They further allege that through such anti-competitive conduct, Alza was able to maintain a monopoly and charge supra-competitive prices Ditropan XL. According to the Direct and Indirect Purchaser Plaintiffs, Defendants' conduct in delaying or preventing the sale of a generic version of the drug caused them to pay more than they otherwise would have paid for the drug.

Direct Purchaser Plaintiff brings the following two claims: (1) a claim premised on Section 2 of the Sherman Act and (2) a claim for restitution, disgorgement and constructive trust. Indirect Purchaser Plaintiffs assert the following three claims: (1) a claim under the California Cartwright Act; (2) a claim for violation of California Business and Professions Code section 17200; and (3) a claim for violation of the antitrust statutes of twenty-eight different states – Alabama, Alaska, Arizona, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

The Court will address additional specific facts as required in the analysis.

**ANALYSIS**

**A.     Direct Purchaser Plaintiff's Complaint.**

    **1.     Antitrust Claim.**

Admittedly, Direct Purchaser Plaintiff did not purchase Ditropan XL from Alza or Johnson & Johnson. Rather, Direct Purchaser Plaintiff's claims are premised on Cardinal Health, Incorporated's ("Cardinal") purchases of Ditropan XL from Ortho-McNeil Pharmaceutical, Incorporated ("Ortho-McNeil"), a wholly owned subsidiary of Johnson & Johnson. Direct Purchaser Plaintiff asserts that Cardinal purportedly assigned its antitrust

2

1  claims to it.  (Declaration of Michael A. Sitzman ("Sitzman Decl."), Ex. 1.)  It is undisputed
2  that Direct Purchaser Plaintiff did not directly purchase Ditropan XL from Defendants and that
3  its ability, if any, to maintain a direct purchaser action against Defendants, arises out of its
4  purported assignment from Cardinal.  However, Direct Purchaser Plaintiff's complaint fails to
5  allege the existence of the assignment from Cardinal.  Without such allegations, any antitrust
6  claims by Direct Purchaser Plaintiff are insufficient.  Accordingly, the Court dismisses the
7  Direct Purchaser Plaintiff's antitrust claim with leave to amend.[2]

**2.     Unjust Enrichment.**

At the hearing on Defendants' motion to dismiss, Direct Purchaser Plaintiff clarified that its unjust enrichment claim is based on state law, but it has not plead under which state or states laws it is based.  In fact, Direct Purchaser Plaintiff admitted it is not yet aware of which state or states' laws it is moving under.  Its ability to plead a claim for unjust enrichment may vary from state to state, and unless and until Direct Purchaser Plaintiff clarifies under what state law it is moving, neither Defendants nor the Court can address whether the claim or claims have been adequately plead.  Accordingly, the Court dismisses the unjust enrichment claim without prejudice.

---

[2] The Court notes that Direct Purchaser Plaintiff's complaint may suffer from another defect.  Direct Purchaser Plaintiff does not dispute that neither Alza nor Johnson & Johnson sold Ditropan XL during the class period.  Rather, its antitrust claim against these defendants is premised on the sales by Ortho-McNeil.  In response to the Court's concern regarding the validity of a direct purchaser action that fails to name the direct seller, Direct Purchaser Plaintiff cited to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 326 (9th Cir. 1980) (holding that "*Illinois Brick* does not bar an indirect purchaser's suit where the direct purchaser is a division or subsidiary of a co-conspirator"), and *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Ligit.*, 497 F. Supp. 218, 227 (C.D. Cal. 1990) (concluding "that an indirect purchaser that purchases from an entity owned or controlled by the wrongdoer may sue to recover passed-on overcharges and is excepted from the general rule of *Illinois Brick*. ...[T]he plaintiffs will be allowed to seek recovery only as to direct purchases from a defendant, a co-conspirator, sellers with whom the plaintiffs had pre-existing, fixed-quantity, cost-plus contracts, or an entity controlled by a conspirator.")  If Direct Purchaser Plaintiff intends to pursue this action, it should be careful to plead facts that demonstrate a basis to maintain a direct purchaser action against *both* Johnson & Johnson *and* Alza based on sales by Ortho-McNeil.

3

**B.     Indirect Purchaser Plaintiffs' Complaint.**

Indirect Purchaser Plaintiffs concede they are not bringing an antitrust claim under New Jersey law. (Indirect Purchasers' Opp. at 13.) Accordingly, the Court grants Alza's motion as to the New Jersey antitrust claim.

**1.     Unfair Competition Law Claim.**

Alza moves to dismiss Indirect Purchaser Plaintiffs' unfair competition law claim under California Business and Professions Code § 17200 ("UCL") on the following grounds: (1) the remedy Indirect Purchaser Plaintiffs seek is precluded under the UCL and (2) Indirect Purchaser Plaintiffs failed to allege reliance.[3]

**i.     The Remedy is not Precluded.**

Damages cannot be recovered pursuant to a UCL claim. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). A plaintiff bringing such a claim is limited to injunctive relief and restitution. *Id.* Indirect Purchaser Plaintiffs do not dispute that they cannot obtain damages for their UCL claim. Instead, they argue that the relief they are seeking is restitutionary. Alza, on the other hand, contends that Indirect Purchaser Plaintiffs do not and cannot state a UCL claim because any money lost by them was not taken *directly* by Alza, and thus, does not qualify as restitution.

In support of its argument, Alza relies primarily on language from the California Supreme Court opinion in *Korea Supply*. In *Korea Supply*, the court addressed when disgorgement of a defendant's profits qualifies as restitution and, thus, is recoverable under UCL claims. *Korea Supply*, 29 Cal. 4th at 1140. The court explained the meaning of the terms

---

[3] Even though Alza did not move to dismiss Indirect Purchaser Plaintiffs' UCL claim on the grounds of lack of standing, the Court questioned Alza at the hearing on its motion as to whether its standing argument would apply to this claim as well. In response, Alza argued it would. However, non-California resident plaintiffs may bring a UCL claim based on misconduct that occurs within the California. *Northwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222, 224-25 (1999) (citing *Diamond Multimedia Syst., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1063-64 (1999)). Because Alza's principal place of business is in California, it is reasonable to infer the alleged misconduct occurred within California. At this procedural stage, the Court will not dismiss Indirect Purchaser Plaintiffs' UCL claim for lack of standing. However, this ruling is without prejudice to Alza raising this argument again if it appears that Indirect Purchaser Plaintiffs do not have any evidence that demonstrates that the alleged misconduct actually occurred in California.

4

1  "restitution" and "disgorgement." An order for "restitution" is defined as one "compelling a
2  UCL defendant to return money obtained through an unfair business practice to those persons in
3  interest from whom the property was taken, that is, to persons who had an ownership interest in
4  the property or those claiming through that person." *Id*. at 1144-45 (quoting *Kraus v. Trinity*
5  *Management Services, Inc.*, 23 Cal. 4th 116, 126-27 (2000)). "Disgorgement" is a broader
6  remedy. "Disgorgement 'may include a restitutionary element, but it is not so limited.'" *Id*. at
7  1145 (quoting *Kraus*, 23 Cal. 4th at 127). An order for "disgorgement" is defined as:
8  (1) "compel[ling] a defendant to surrender all money obtained through an unfair business
9  practice even though not all is to be restored to the person from whom it was obtained or those
10 claiming under those persons," or (2) compelling a UCL defendant "to surrender ... all profits
11 earned as a result of an unfair business practice regardless of whether those profits represent
12 money taken directly from persons who were victims of the unfair practice." *Id*. at 1145
13 (quoting *Kraus*, 23 Cal. 4th at 127). Thus, the court clarified that disgorgement of profits is
14 allowed in UCL claims only to the extent it constitutes restitution, *i.e.*, profits unfairly obtained
15 to the extent they represent money in which the plaintiff has an ownership interest. *Id*. at 1145,
16 1148; *see also Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 699 (2006) (a
17 plaintiff can seek money or property as restitution where such "money or property identified as
18 belonging in good conscience to the plaintiff could clearly be traced to particular funds or
19 property in the defendant's possession") (citation omitted).

20       In *Korea Supply*, a plaintiff who alleged a lost business opportunity due to the unfair
21 practices of a competitor sought to obtain disgorgement of the competitor's profits. *Korea*
22 *Supply*, 29 Cal. 4th at 1140. The plaintiff alleged that the defendant's unfair business practices
23 caused a company the plaintiff represented to lose a contract with the Republic of Korea. When
24 the Republic of Korea awarded the contract to the defendant, the plaintiff lost the opportunity to
25 obtain a commission it would have earned if the Republic of Korea had awarded the contract to
26 the plaintiff's client. *Id*. The plaintiff then sought to obtain the profits the defendant gained
27 from the contract with the Republic of Korea. The Court held that the plaintiff was not entitled
28 to disgorgement of the defendant's profits under the UCL because the profits were neither

5

money taken from the plaintiff nor funds in which the plaintiff had an ownership interest. Thus, the plaintiff's requested remedy was nonrestitutionary. *Id*. at 1140, 1149.

The court reasoned that "[t]he object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Id* at 1149. The court noted that "it [was] clear that plaintiff [was] not seeking the return of money or property that was once in its possession. [The plaintiff had] not given any money to [the defendant]; instead it was from the Republic of Korea that [the defendant] received its profits." *Id*. In light of these facts, the court found that "[a]ny award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff." *Id*.

Alza places great weight on the word "directly" in the preceding sentence, and argues argues that because Plaintiffs, as indirect purchasers, did not pay any money *directly* to Alza, Plaintiffs cannot recover restitution under the UCL. However, as noted above, it was clear in *Korea Supply* that the plaintiff did not pay *any* money, even indirectly, to the defendant. In *Korea Supply*, the defendant's conduct merely caused the plaintiff to lose an opportunity to obtain a commission it would have received if a third party had awarded a contract to its client. Although the court mentions that "direct victims" of unfair competition may obtain restitution, *id*. at 1152, the issue of whether someone who pays money to a defendant through an intermediary would be precluded from seeking restitution was not before the court in *Korea Supply*. Therefore, this Court will not read such a limitation into the holding of *Korea Supply*.

Nor do the other cases relied on by Alza convince the Court that Indirect Purchaser Plaintiffs are precluded from recovering restitution as a matter of law. *See Madrid v. Perot Systems Corp.*, 130 Cal. App. 4th 440 (2005); *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059 (C.D. Cal. 2003). In these cases the issue of whether indirect purchasers could recover restitution was not before the court. As in *Korea Supply*, it was clear that the plaintiffs were seeking to recover funds that they never paid to defendants or in which they ever had an ownership interest. *Madrid*, 130 Cal. App. 4th at 456 (affirming summary judgment where "even assuming [the defendant] sold confidential information,

plaintiff fail[ed] to show that such profit, received from third parties, would qualify as money taken from plaintiff or money in which plaintiff had a vested ownership interest, so as to be recoverable as restitution in this UCL action"); *National Rural Telecommunications*, 319 F. Supp. 2d at 1079 (granting summary judgment on UCL claim finding "Plaintiffs [were] not seeking the return of money that was once in their possession").

Alza's reliance on *In re First Alliance Mortgage Co.*, 471 F. 3d 977 (9th Cir. 2006), a case it brought to the Court's attention as recent authority, similarly is misplaced.[4] This case involved a complicated financial scheme in which any funds paid by the plaintiffs were not traceable to those eventually funds paid to the defendant. The plaintiffs were borrowers of First Alliance Mortgage Company ("First Alliance") who sought to impose liability on the defendant for aiding and abetting a fraudulent scheme engaged in by First Alliance. *Id*. at 983. Pursuant to the scheme, First Alliance persuaded borrowers to assume loans with high interest rates and hidden "junk" fees. *Id*. at 985. First Alliance used a credit line provided by the defendant to fund and secure the loans. The defendant profited by earning interest from the credit line and fees for underwriting the securitizations. *Id*. at 986. The court affirmed summary judgment on the plaintiffs' UCL claim because it determined the relief the plaintiffs were seeking under this claim was more akin to "nonrestitutionary disgorgement" prohibited by *Korea Supply*. *Id*. at 997. The plaintiffs were seeking to disgorge *all* of the defendant's profits earned by the unfair business practice, "regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice." *Id*. The court found that:

> [T]he [plaintiffs] in this case cast their claim under section 17200 as one for equitable relief by asking the court to disgorge [the defendant's] "ill-gotten gains," asserting that [the defendant] unlawfully acquired money and property directly and indirectly from the [plaintiffs] and has been unjustly enriched at their expense. They do not, however, specify the amount of these "ill-gotten gains" to which they have an actual ownership interest.

*Id*. at 997. Significantly, the plaintiffs "did not actually claim an ownership interest in funds in [the defendant's] possession, nor explain the basis of their purported ownership interest in those funds." *Id*. at 997 n. 7. Therefore, the court found that their equitable claim under the UCL

---

[4] The Court grants Alza's request for leave to submit this decision.

7

would be left largely to the court's speculation and thus, affirmed summary judgment against the plaintiffs. *Id*. at 997-98. In contrast, Indirect Purchaser Plaintiffs here do allege an ownership interest in funds received by Alza, namely, the profits Alza obtained by allegedly inflating the price of Ditropan XL.

Although the parties did not cite to, and the Court did not find, any authority applying California law that squarely addresses whether *indirect* purchaser plaintiffs may recover restitution under the UCL,[5] the Court notes that one district court refused to dismiss a UCL claim in a factually analogous situation. *See Trew v. Marx*, 2006 WL 306904, *2-3 (E.D. Cal. Feb. 8, 2006). In *Trew*, Volvo moved to strike the plaintiffs' claim for disgorgement under the UCL because, it argued, plaintiffs' damages could not be traced to funds acquired by it. *Trew*, 2006 WL 306904, at *2. The plaintiffs were owners of Volvo cars. They alleged that Volvo installed defective electronic throttle modules ("ETMs") in their cars. Volvo asserted that the "plaintiffs paid dealerships or independent mechanics to service their ETMs and that these monies did not go to Volvo." *Id*. The plaintiffs responded that Volvo, as the producer of the ETMs, profited from the sale of ETMs to car owners who had to have them replaced. *Id*. at *3. The court denied the motion to strike the claim for disgorgement because the plaintiffs could recover as restitution Volvo's profits from owners who replaced defective ETMs. *Id*.

In light of the reasoning of *Korea Supply*, as well as that of *Trew*, the Court concludes that as long as Indirect Purchaser Plaintiffs are ultimately able to prove traceability, California law authorizes this Court to award them restitution under the UCL. Indirect Purchaser Plaintiffs

---

[5] Both parties assert that *Colgan*, 135 Cal. App. 4th 663 supports their position. However, the Court finds it does not assist either. In *Colgan*, the court struck down a restitution award to indirect purchaser plaintiffs who brought an antitrust action. *Id*. at 700. The court noted that the *Korea Supply* "made clear that the 'object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.'" *Colgan*, 135 Cal. App. 4th at 697 (citing *Korea Supply*, 29 Cal. 4th at 1149). Restitution under § 17200 "must be of a measurable amount to restore to the plaintiff what has been acquired by violations of the statutes, and that measurable amount must be supported by evidence." *Id* at 698. The court struck down the restitution award, not because the court was not authorized to award restitution to the customers, but because there was "*no* evidence concerning the amount of restitution necessary to restore purchasers to the *status quo ante*." *Id*. at 700 (emphasis in original). Because there was insufficient evidence to support the award, the court did not address the issue of whether restitution could be awarded to indirect purchasers.

8

are seeking to recover funds that *they* overpaid to Alza.[6] That Indirect Purchaser Plaintiffs allege such funds were paid to Alza through an intermediary does not change the fact that Indirect Purchaser Plaintiffs are seeking funds in which they have an ownership interest. If Indirect Purchaser Plaintiffs can demonstrate that the amount they overpaid for Ditropan XL was the amount that Alza overcharged, and that any intermediaries merely passed on the overcharge from Alza to the Indirect Purchaser Plaintiffs as end-paying customers, they may recover such funds as restitution under the UCL.

### ii. Plaintiffs Need Not Allege Reliance.

Alza also argues that Indirect Purchaser Plaintiff's UCL claim should be dismissed because they have not alleged reliance on any misrepresentations. Pursuant Section 17200, "there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent." *See Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006); *see also Albillo v. Intermodal Container Services, Inc.*, 114 Cal. App. 4th 190, 206 (2003) (to state a UCL claim, a "plaintiff must establish that the practice is either unlawful unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of the public)"). Alza has not proffered any authority that demonstrates reliance on misrepresentations, as opposed to *causation* more generally, is required for UCL claims which fall under the unfair or unlawful prongs.

Proposition 64, which was approved by California voters on November 2, 2004, amended the UCL to limit the standing of private plaintiffs to bring UCL claims to those who "suffered injury in fact and has lost money as a result of such unfair competition." *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1193 (S.D. Cal. 2005) (quoting Cal. Bus. & Prof. Code § 17204). The UCL, as amended by Proposition 64, thus requires a person seeking to represent

---

[6] The Court notes that Defendants contend Ortho-McNeil, not Alza, sold Ditropan XL during the class period. If true, Plaintiffs may be precluded from seeking any restitution because the money they are seeking to recover was not actually paid to Alza. Indirect Purchaser Plaintiffs may need to proffer the existence of facts and authority demonstrating that the money paid to Ortho-McNeil may be attributed to Alza for purposes of the UCL claim and that Ortho-McNeil should not be considered a separate entity. However, because Alza did not raise this point in its motion, and because the facts upon which the Court could decide this issue are not yet before it, the Court declines to dismiss Indirect Purchaser Plaintiffs' UCL claim at this stage.

1  claims on behalf of others to show "(1) she has suffered actual injury in fact, and (2) such injury
2  occurred as a result of the defendant's alleged unfair competition or false advertising." *Id*. at
3  1194. Thus, "a showing of causation is *required* as to each representative plaintiff." *Id*.,
4  (emphasis in original); *see also Doe v. Texaco*, 2006 WL 2053504 (N.D. Cal. July 21, 2006)
5  (dismissing UCL claim for failure to sufficiently allege causation).

6  In *Laster*, the plaintiffs' UCL claim was brought under the fraudulent prong of Section
7  17200 and was premised on alleged false advertising by a phone company. According to the
8  plaintiffs, the phone company falsely advertised that cell phones were free or substantially
9  discounted but charged customers sales tax based on the phones' full retail value. *Id*. at 1194.
10 However, the plaintiffs failed to allege that they actually relied on any false or misleading
11 advertising in entering into the transactions and, thus, failed to adequately allege causation. *Id*.

12 Similarly, in *Texaco*, the plaintiffs' UCL claim was based on alleged misrepresentations.
13 *Texaco*, 2006 WL 2053504 at *1-3. The plaintiffs alleged that pollution by Texpet raised the
14 average risk of cancer. Texpet then merged with Chrevron. The plaintiffs brought a UCL claim
15 against Chevron based on misrepresentations denying that Texpet's conduct was responsible for
16 environmental and health problems in the region. *Texaco*, 2006 WL 2053504 at *1. The court
17 noted that "[f]or plaintiffs to prevail, they would have to claim that their cancer or increased
18 risk of cancer caused them to lose money or property and that the false statements caused the
19 cancer or increased risk thereof. Such a contention would be patently absurd and appears no
20 where in the complaint." *Id*. at *3.

21 It is logical to require reliance on misrepresentations when a UCL claim is premised on
22 allegations that the defendants engaged in fraudulent business practices. However, where, as
23 here, plaintiffs allege that they were harmed by other types of misconduct actionable under the
24 UCL the Court finds no basis for requiring reliance on misrepresentations.

25 In essence, Indirect Purchaser Plaintiffs allege that Alza filed a baseless complaint to
26 preclude a competitor from producing a generic version of Ditropan XL, as well as other anti-
27 competitive conduct. (Indirect Purchaser Compl., ¶¶ 92-98.) They further allege that through
28 such anti-competitive conduct, Alza was able to maintain a monopoly and charge supra-

10

competitive prices. (*Id*., ¶ 246.) According to Indirect Purchaser Plaintiffs, Alza's conduct in delaying or preventing the sale of a generic version caused them to pay more than they otherwise would have for the drug. (*Id*., ¶ 251.) Thus, at the very least, they allege a UCL claim premised on the unfair prong. Because Indirect Purchaser Plaintiffs have alleged facts sufficient to state a claim under the unfair prong, the Court need not determine on a motion to dismiss whether they have also alleged sufficient facts to maintain their UCL claim under the fraudulent prong.

### 3. Standing To Bring Various Antitrust State Law Claims

Except for the antitrust claims based on Tennessee, New York, North Dakota, and New Jersey law, Alza moves to dismiss all of Indirect Purchaser Plaintiffs' state law antitrust claims brought under their third cause of action on the grounds of lack of standing. Under their third cause of action, in addition to the antitrust claims based on Tennessee, New York, North Dakota, and New Jersey law, Indirect Purchaser Plaintiffs allege that Alza's conduct violates the antitrust laws of the following twenty-four states: Alabama, Alaska, Arizona, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, South Dakota, Vermont, West Virginia, and Wisconsin. (Indirect Purchaser Compl., ¶ 280.) Alza argues that Indirect Purchaser Plaintiffs' lack standing because none of the named plaintiffs reside in or are alleged to have personally purchased Ditropan XL in any of these twenty-four states.

To demonstrate standing "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 347 (1996) (internal quotes omitted). Moreover, at least one named plaintiff must have standing with respect to each claim the class representatives seek to bring. *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) ("a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."); *see also In re Salomon Analyst Level 3 Litig.,* 350 F. Supp. 2d 477, 496 (S.D.N.Y.

11

2004); *In re Terazosin Hydrocholoride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1370-71 (S.D. Fla. 2001) (dismissing based for lack of standing the state law antitrust claims in which none of the named plaintiffs resided or purchased the drug at issue).

Indirect Purchaser Plaintiffs do not assert there is basis to confer standing on them to bring claims based on the state law of states in which they do not reside, but rather, argue that the determination of standing is premature prior to class certification. (Indirect Purchasers' Opp. at 11-12 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999).) However, the Ninth Circuit has rejected this exact argument. *See Easter v. American West Financial*, 381 F.3d 948, 962 (9th Cir. 2004). The Ninth Circuit reasoned that "[a]though the court in *Fibreboard* examined class issues before the question of Article III standing, it did so in the very specific situation of a mandatory global settlement class. *Fibreboard* does not require courts to consider class certification before standing." *Id*. Thus, the court held that the "district court correctly addressed the issue of standing before it addressed the issue of class certification." *Id*.

Plaintiffs bear the burden of demonstrating standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). They have not done so here. Accordingly, the Court dismisses for lack of standing the claims based on the antitrust law of the following twenty-four states: Alabama, Alaska, Arizona, California,[7] District of Columbia, Florida, Hawaii, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, South Dakota, Vermont, West Virginia, and Wisconsin without prejudice.

**4. Donnelly Act**.

---

[7] The Court notes that Indirect Purchaser Plaintiffs allege a claim under California's antitrust law, the Cartwright Act, under both their second and third causes of action. Although Alza only raised its standing argument with respect to Plaintiffs' Cartwright Act claim under the third cause of action, the Court's finding that Plaintiffs failed to demonstrate standing as to this claim necessarily applies to the same claim pled under the second cause of action. Accordingly, the Court need not address the parties' arguments as to whether Indirect Purchaser Plaintiffs sufficiently alleged coercive conduct actionable under the Cartwright Act.

12

Alza moves to dismiss Indirect Purchaser Plaintiffs' claim under New York General Business Law § 340, known as the "Donnelly Act," which is New York's antitrust statute. *See Leider v. Ralfe*, 387 F. Supp. 283, 287 (2005). Alza argues that the Court should dismiss this claim because New York law does not permit private class actions under the Donnelly Act. *See id.* ("New York law firmly disallows a Donnelly class action by private plaintiffs."). This Court agrees.

New York Civil Practice Law and Rules § 901 ("CPLR 901"), which sets forth the prerequisites to class action suits, provides in pertinent part that "[u]nless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action." N.Y. C.P.L.R. § 901(b). The Donnelly Act in turn provides in pertinent part: "any person who shall sustain damages by reason of any violation of this section, *shall recover three-fold the actual damages* sustained thereby. ..." N.Y. Gen. Bus. Law § 340(5) (emphasis added). The statute is silent as to class actions. Cases applying New York law have construed the Donnelly Act in light of CPLR 901 and, thus, have held that class actions cannot be maintained under the Donnelly Act. *See Leider*, 387 F. Supp. at 287-88; *see also Asher v. Abbott Laboratories*, 737 N.Y.S.2d 4, 4-5 (2002).

In opposition to the motion to dismiss, Indirect Purchaser Plaintiffs argue that Alza "ignores the New York Supreme Court's Appellate Division holding entitling a plaintiff to bring a class action for antitrust activities pursuant to N.Y. Gen. Bus. Law § 349 if the plaintiff foregoes any demand for punitive damages." (Indirect Purchasers' Opp. at 15.) In support of their argument, they cite to *Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147, 149 (2002), which allows a class action to go forward under New York General Business Law § 349 ("Section 349"). Indirect Purchaser Plaintiff's reliance on Section 349, and the case law interpreting this statute, is misplaced because section 349 is part of a different statute. "General Business Law article 22-A, of which section 349 is a part, is entitled 'Consumer Protection from Deceptive Acts and Practices.'" *Feinberg v. Federated Dept. Stores, Inc.*, 832 N.Y.S.2d 760, 764 (2007).

13

Significantly, Section 349 provides in pertinent part that "any person who has been injured by reason of any violation of the section may bring an action ... to recover his actual damages or fifty dollars, whichever is greater." N.Y. Gen. Bus. Law § 349(h). In *Cox*, the court found CPLR 901 was inapplicable because the plaintiffs expressly sought only their actual damages in their complaint. *Cox*, 778 N.Y.S.2d at 149. Accordingly, the Court dismisses Indirect Purchaser Plaintiffs' Donnelly Act claim. To the extent Indirect Purchaser Plaintiffs seek to allege a claim under a different law, this ruling is without prejudice to their seeking leave to amend to add a new claim.

### 5. Tennessee Law.

Indirect Purchaser Plaintiffs plead an antitrust claim under Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101 *et seq*. "(TTPA"). Alza moves to dismiss this claim on the basis that Indirect Purchaser Plaintiff's complaint only pleads unilateral conduct, which is not covered by the TTPA. The TTPA prohibits "all arrangements, contracts, agreements, trusts, or combinations *between persons or corporations* designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article." *See* Tenn. Code Ann. § 47-25-101 (emphasis added).

The only authority cited by the parties analyzing the language of the TTPA and whether it applies to unilateral conduct is *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 284 (D. Mass. 2004). *In re Relafen* is factually analogous to the Indirect Purchasers Plaintiffs' action before this Court. In that case, the defendant received a patent for a drug. When other companies sought approval from the Food and Drug Administration ("FDA") to market a generic version of the drug, the defendant filed lawsuits to enforce its patent and to preclude approval of the generic drugs. The courts in the underlying patent litigation found that the patent was unenforceable based on prior art and inequitable conduct. *Id*. at 264. In the antitrust action, the plaintiffs argued that the defendant wrongfully filed patent lawsuits to preclude its competitors from selling generic versions of the drug. *Id*. The court found that the plaintiffs alleged unilateral, not concerted, action. *Id*. at 282-83. The court then analyzed the plain language of

14

1 the Tennessee statute, emphasizing the terms "*between persons or corporations*" in the TTPA,
2 and concluded that it only applied to unilateral conduct. *Id*. at 284.

3     In their brief in opposition to the motion to dismiss and at the hearing, Indirect
4 Purchaser Plaintiffs rely on the plain language of the TTPA to argue that the statute
5 encompasses Alza's conduct as alleged in their complaint. At the hearing, they argued that the
6 language "all arrangements" is broad. However, they ignore the modifying language "between
7 persons or corporations." The cases cited to by Indirect Purchaser Plaintiffs at the hearing do
8 not assist them because those cases did not address whether a defendant's unilateral activity to
9 exclude competitors from the market would be prohibited by the TTPA. *See In re Cardizem*
10 *CD Antitrust Litig.*, 105 F.Supp.2d 618, 667 (E.D. Mich. 2000) (addressing whether TTPA is
11 limited to transactions that are wholly or predominantly within the state); *Duke v. Browning-*
12 *Ferris Indus. of Tenn., Inc.*, 2006-1 Trade Cases P 75-323, 2006 Tenn. App. LEXIS 355, *20-21
13 (Tenn. App. Ct. 2006) (affirming denial of TTPA claim for monopolization or attempted
14 monopolization where there were no barriers to entry into the market); *Sherwood v. Microsoft*
15 *Corp.*, 2003-1 Trade Cases P 74,109, 2003 WL 21780975, at *1 (Tenn Ct. App. 2003)
16 (determining whether indirect purchasers could bring an action for damages under the TTPA
17 and whether the TTPA applies to activity with substantial effects on commerce within the state).

18     Upon review of the plain language of the Tennessee statute, and in the absence of any
19 authority demonstrating that Tennessee courts would construe this language to apply to the
20 conduct alleged in this action, the Court finds that the TTPA does not encompass the conduct
21 the Indirect Purchaser Plaintiffs have alleged. Accordingly, the Court grants Alza's motion to
22 dismiss as to Plaintiff's antitrust claim under Tennessee law. This ruling is without prejudice to
23 Indirect Purchaser Plaintiffs' seeking leave to amend if they are aware of additional facts they
24 could allege which would be sufficient to demonstrate covered conduct *between persons or*
25 *corporations*.

26 **CONCLUSION**

27     For the foregoing reasons, the Court ORDERS as follows:
28 (1) Defendants' motion to dismiss Direct Purchaser Plaintiff's complaint is GRANTED;

(2) Alza's motion to dismiss Indirect Purchaser Plaintiffs' complaint is GRANTED as to their claims under the antitrust laws of New Jersey , New York, Tennessee, Alabama, Alaska, Arizona, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, South Dakota, Vermont, West Virginia, and Wisconsin; and

(3) Alza's motion to dismiss Indirect Purchaser Plaintiffs' complaint is DENIED as to their UCL claim.

This ruling is without prejudice to Direct and Indirect Purchaser Plaintiffs filing amended complaints in compliance with this Order.  Direct and Indirect Purchaser Plaintiffs shall file any amended complaints within twenty-one days of the date of this Order.   If Direct Purchaser Plaintiffs do not file an amended complaint within twenty-one days, its action shall be dismissed.  If necessary, Defendants shall file their answers or move to dismiss within twenty days of service of any amended complaint or the deadline to amend has expired, whichever is earlier.

**IT IS SO ORDERED**

Dated: May 11, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE