IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: DITROPAN XL ANTITRUST
LITIGATION

CASE NO. M:06-CV-01761-JSW

MDL No. 1761

This Order Relates to:

ALL CASES

**AMENDED ORDER GRANTING DEFENDANTS' MOTION TO DISMISS DIRECT PURCHASER'S SECOND AMENDED COMPLAINT**

Now before the Court is the motion to dismiss plaintiff American Sales Company's ("ASC") second amended class action complaint ("SAC") filed by defendants Alza Corporation ("Alza") and Ortho-McNeil Pharmaceutical, Inc. ("Ortho-McNeil") (collectively, "Defendants"). Having considered the parties' arguments, relevant legal authority, and having had the benefit of oral argument, the Court hereby grants the motion to dismiss the ASC's SAC.[1]

**BACKGROUND**

This is an antitrust action. ASC alleges that Alza Corporation ("Alza") filed a baseless complaint to preclude a competitor from producing a generic version of the drug Ditropan XL, as well as other anti-competitive conduct. (SAC, ¶¶ 5, 8.) ASC alleges that Ortho-McNeil

---

[1] The Court denies ASC's administrative motion to lodge a statement of recent decision because the opinion cited is inapplicable to the issues before the Court on the pending motion to dismiss.

participated in the anti-competitive conduct by filing a citizen's petition in front of the Food and Drug Administration. (*Id.*, ¶¶ 8, 58.) Both Alza and Ortho-McNeil are wholly owned subsidiaries of Johnson & Johnson. (*Id.*, ¶ 6.) According to ASC, through such anti-competitive conduct, Alza and Ortho-McNeil were able to maintain a monopoly and charge supra-competitive prices for Ditropan XL. Based on such conduct, ASC asserts a claim under Section 2 of the Sherman Act, 15 U.S.C. § 2.

Although ASC brings this action as a direct purchaser, it is undisputed that ASC did not purchase Ditropan XL from either Alza or Ortho-McNeil. Rather, ASC's claim is premised on Cardinal Health, Incorporated's ("Cardinal") purchases of Ditropan XL from Ortho-McNeil. ASC contends that it has standing to sue as a direct purchaser based on purported assignments from Cardinal to sue Ortho-McNeil and Alza. Defendants challenge the validity of any such assignments.

The Court will address additional specific facts as required in the analysis.

## ANALYSIS

### A.     Legal Standards Applicable to a Motion to Dismiss.

Standing pertains to a federal court's subject-matter jurisdiction under Article III, and thus, is properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). When a defendant moves to dismiss a complaint or claim for lack of subject matter jurisdiction, the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim. *Thornhill Publ'n Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *see also Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005) (plaintiff bears burden of establishing standing).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004.) Where an attack on jurisdiction is a "facial" attack on the allegations of the complaint, the factual allegations of the complaint are taken as true and the non-moving party is entitled to have those facts construed in the light most favorable to him or her. *Federation of African Amer. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). If the jurisdictional

attack is "factual," a defendant may rely on affidavits or other evidence that would be properly before the Court, and the non-moving party is not entitled to any presumptions of truthfulness with respect to the allegations in the complaint. Rather, he or she must come forward with evidence establishing jurisdiction. *Thornhill*, 594 F.2d at 733.

**B.     ASC Lacks Standing to Sue Ortho-McNeil.**

Defendants raise two defects with ASC's asserted standing based on a purported assignment from Cardinal. First, Defendants argue that ASC does not have an executed assignment from Cardinal to sue Ortho-McNeil. Second, Defendants contend that any such assignment would be barred by the Distribution Performance Agreement between Cardinal and Ortho-McNeil.

Whether a plaintiff has standing to sue "is determined as of the date of filing the complaint.... The party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing." *Wilbur*, 423 F.3d at 1107 (citation omitted). The assignment ASC initially relied on to sue Ortho-McNeil only provides authority to sue Alza and Johnson & Johnson. (Declaration of Michael A. Sitzman, Ex. 1.) ASC attempts to cure this defect by submitting another assignment from Cardinal.[2] ASC submitted a document entitled: "[Proposed] Assignment of Claims from Cardinal ...." (Declaration of Elaine T. Byszewski, ¶ 4, Ex. A.) This purported assignment, which does name Ortho-McNeil, is dated July 2, 2007, after ASC filed its SAC, and is not signed by ASC. At the oral argument on the instant motion to dismiss, ASC represented that it now possesses a fully executed assignment from Cardinal to sue Ortho-McNeil. Nevertheless, any such assignment post-dates SAC's filing of the SAC and is thus insufficient to confer standing. *See Wilbur*, 423 F.3d at 1107.

Even if SAC had presented a fully executed assignment from Cardinal naming Ortho-McNeil, SAC's standing suffers from another defect – any such assignment is precluded by the Distribution Performance Agreement between Cardinal and Ortho-McNeil. (Supplemental

---

[2] The Court disagrees with ASC that the purported assignment's failure to name Ortho-McNeil as one of the Manufacturer Defendants who may be sued by ASC is merely a technical failure. (Opp. at 6.)

3

United States District Court
For the Northern District of California

Declaration of Jill Lavitsky ("Suppl. Lavitsky Decl."), Ex. 2.) The DPA prohibits either Cardinal or Ortho-McNeil from assigning rights or obligations arising under the DPA without the consent of the other party. (*Id*., Ex. 2.) Ortho-McNeil has not consented to any assignment by Cardinal. (*Id*., ¶ 4.) Defendants submit evidence to show that the Distribution Performance Agreement ("DPA") governs Cardinal's purchases of Ditropan XL from Ortho-McNeil. (Suppl. Lavitsky Decl., ¶ 3 ("Cardinal's purchases of Ditropan XL from Ortho- McNeil are made pursuant to the terms of the DPA.").) Despite having notice of this argument and evidence since at least November 3, 2006, when Defendants filed a similar declaration in support of their first motion to dismiss, ASC did not submit any contrary evidence. Instead, ASC relies solely on the language of the DPA to argue that it does not apply to purchases, but rather is merely an inventory replenishment agreement. However, the Court notes that the DPA discusses price control protection. (*Id*., Ex. 2 at 7-9. ) Therefore, the agreement may not be construed accurately as merely an inventory replenishment agreement. In light of Defendants' uncontradicted evidence demonstrating that the DPA governs the relationship between Ortho-McNeil and Cardinal and that Cardinal's purchases of Ditropan XL from Ortho-McNeil are made pursuant to the terms of the DPA, the Court finds that ASC's purported assignment is barred by Cardinal's failure to obtain Ortho-McNeil's consent.  Accordingly, the Court grants Defendants' motion to dismiss as to Ortho-McNeil.

**C.    ASC Fails to Allege Facts Supporting It Claim Against Alza.**

Without standing to sue Ortho-McNeil, ASC must allege facts demonstrating it can bring a direct purchaser action against Alza, a company that admittedly did not sell the Ditropan XL during the purported class period. With limited exceptions, only direct purchasers may bring an antitrust claim under Section 2 of the Sherman Act. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 730-36 (1977); *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 492-94 (1968). In *Illinois Brick*, the Supreme Court suggested there were two exceptions to this prohibition against indirect purchaser antitrust suits: (1) if an indirect purchaser received goods from the direct purchaser according to a preexisting "cost-plus contract;" or (2) if the direct purchaser is controlled or owned by another party, either by the seller or the indirect purchaser.

4

*Illinois Brick*, 431 U.S. at 726 n. 2, 736 n. 16; *see also Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 326 (9th Cir. 1980) (applying ownership or control exception to allow indirect purchaser's suit). The Supreme Court later clarified that these exceptions should be read narrowly and not expanded. *Kansas v. Utilicorp United, Inc.*, 497 U.S. 199, 216-17 (1990); *see also Burkhalter Travel Agency v. MacFarms Internat'l., Inc.,* 141 F.R.D. 144, 148 (N.D. Cal.1991) ("The Supreme Court has made it clear that these are very limited exceptions."). ASC has not alleged any facts, or even argued, that its claim falls within either of these two exceptions.

Instead, ASC contends that it can maintain its antitrust claim against Alza because it alleges that Alza and Ortho-McNeil were "business partners" and conspired together to exclude competitors from the market. However, this argument suffers from several defects. First, despite the Court's admonition in the order dismissing the first amended class action complaint to "be careful to plead facts that demonstrate a basis to maintain a direct purchaser action against ... Alza based on sales by Ortho-McNeil" (Docket No. 66 at 3 n.2), the SAC does not actually contain any allegations which, if true, would demonstrate the existence of a conspiracy between Alza and Ortho-McNeil. The Supreme Court recently clarified that to plead a conspiracy under Section 1 of the Sherman Act, a plaintiff must allege "enough factual matter (taken as true) to suggest that an agreement was made. ... [A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 66, 71 n.10 (2007). While a complaint need not contain detailed factual allegations, a plaintiff must do more that provide mere "labels and conclusions ... . Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65 (finding allegations of conspiracy insufficient where "the pleadings mentioned no specific time, place, or person involved in the alleged conspiracies"). Although ASC's claim arises under Section 2 of the Sherman Act, the Court finds no reasoned basis to avoid the application of the standard set forth in *Twombly* here, especially in light of the fact that ASC's sole basis upon which it asserts its direct purchaser action against Alza is predicated on a purported conspiracy.

1    Second, it is not clear that there is a valid co-conspirator exception to the prohibition on
2 indirect purchaser suits. In *UtiliCorp United*, the Supreme Court "cautioned lower federal
3 courts against creating new exceptions to the *Illinois Brick* rule." *Dickson v. Microsoft Corp.*,
4 309 F.3d 193, 214 (4th Cir. 2002) (quoting *UtiliCorp United*, 497 U.S. at 216: "The rationales
5 underlying *Hanover Shoe* and *Illinois Brick* will not apply with equal force in all cases. We
6 nonetheless believe ample justification exists for our stated decision not to carve out exceptions
7 to the direct purchaser rule."); *see also In re Bank Name Prescription Drugs Antitrust Litig.*,
8 123 F.3d 599, 605 (7th Cir. 1997) ("*Utilicorp* implies that the only exceptions to the *Illinois
9 Brick* doctrine are those stated in *Illinois Brick* itself."). The Fourth Circuit noted that despite
10 the Supreme Court's admonition, several courts have recognized a "co-conspirator exception"
11 to the direct purchaser rule. *Dickson*, 309 F.3d at 215 (reserving on ruling whether the court
12 would recognize such an exception). The Ninth Circuit has not addressed the purported co-
13 conspirator exception to *Illinois Brick* since the Supreme Court's admonition in *UtiliCorp
14 United*. Thus, it is not clear whether such an exception is valid. However, the Court need not
15 decide whether such an exception would be valid because ASC is barred from relying on any
16 such exception based on its inability to sue the direct seller, Ortho-McNeil.

17    Alleged co-conspirator-intermediaries, whose participation must be demonstrated if a
18 vertical conspiracy is to be proved and *Illinois Brick* circumvented, must be named as
19 defendants.[3] *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*,
20 681 F.2d 1335, 1342 (9th Cir. 1982) ("joinder of [direct sellers] is required to prevent a serious

---

[3] At the oral argument on the instant motion to dismiss, ASC argued that there was no *Illinois Brick* issue present here because there was only one level of selling. However, as ASC alleges, Alza owns the patent for Ditropan XL. (SAC, ¶¶ 6, 50.) Thus, in order for Ortho-McNeil to sell Ditropan XL, Alza must have sold a licence or otherwise transacted with Ortho-McNeil regarding Ditropan XL. Moreover, it is not clear which entity manufactures Ditropan XL. In paragraph 6 of its SAC, ASC alleges that Alza manufactures the drug, but in paragraph 51, ASC alleges that Ortho-McNeil is the entity that manufactures Ditropan XL. To the extent Alza is the entity that manufactures Ditropan XL, Ortho-McNeil must have purchased Ditropan XL from Alza. Therefore, ASC is an indirect purchaser with respect to Alza and *Illinois Brick*'s prohibition against antitrust suits by indirect purchasers is fully applicable.

6

risk of multiple liability");[4] *see also Link v. Mercedes-Benz of N. Am., Inc.,* 788 F.2d 918, 931 (3d Cir. 1986) ("We decline to recognize this exception where, as here, the alleged co-conspirators are not also joined as co-defendants."); *In re Midwest Milk Monopolization Litig.,* 730 F.2d 528, 532 (8th Cir. 1984) ("[A]ssuming plaintiffs' argument to be a valid exception to *Illinois Brick,* joinder of the ... unnamed coconspirators[ ] is required to prevent a substantial risk of duplicitous liability."); *In re Beef Indus. Antitrust Litig.,* 600 F.2d 1148, 1163 (5th Cir. 1979) ("[W]e do not think that the reasoning of *Illinois Brick* permits recognizing the exception when, as here, the alleged co-conspirator middlemen are not named as parties defendant."). Here, as discussed above, ASC does not have standing to sue Ortho-McNeil, the alleged co-conspirator-intermediary. Thus, ASC cannot rely on any conspiracy exception to bring its suit against Alza, a non-direct seller. Accordingly, the Court grants Defendants' motion as to Alza.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss. The Court's dismissal of Ortho-McNeil is with prejudice. With respect to Alza, the Court will provide ASC one last opportunity to amend its complaint to plead facts to show ASC may bring an antitrust claim against this non-direct seller. As noted above, ASC did not plead or argue that its claim falls within one of the two exceptions stated in *Illinois Brick*: (1) if Ortho-McNeil received goods from Alza according to a preexisting "cost-plus contract;" or (2) if Ortho-McNeil is controlled or owned by Alza. If ASC has a good faith belief that one of these two

---

[4] The Court notes that the Ninth Circuit in *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 668 F.2d 1014 (9th Cir. 1981), stated that a plaintiff was "not required to sue all of the alleged coconspirators inasmuch as antitrust coconspirators are jointly and severally liable for all damages caused by the conspiracy." *Id*. at 1053. However, in *William Inglis*, the plaintiff did not allege a vertical conspiracy to circumvent *Illinois Brick. See In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 1992-2 Trade Cases P 69,915, 1992 WL 220753, * 5 (C.D. Cal. July 16, 1992) (distinguishing *William Inglis*, noting that *William Inglis* stands for the general proposition that a plaintiff need not name all members of a conspiracy in order to proceed against any conspirator, but that a plaintiff must join the direct seller if it alleges a vertical conspiracy to circumvent *Illinois Brick*); *see also In re Midwest Milk Monopolization Litig.,* 730 F.2d 528, 531 (8th Cir. 1984) (noting that the court in *William Inglis* did not discuss the issue of joining co-conspirators in terms of *Illinois Brick*").

7

exceptions is applicable, it may file an amended complaint by within twenty-one days. If ASC does not file an amended complaint within twenty-one days, its action shall be dismissed.

**IT IS SO ORDERED.**

Dated: October 11, 2007

                                                      *Jeffrey S. White*
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE